UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SONYA SHAFQAT MAHMOOD,<br><br>                    Plaintiff,<br>    v.<br><br>RENA BITTER et al.,<br><br>                    Defendants. | CASE NO. 2:24-cv-01646-TL<br><br>ORDER ON MOTION TO DISMISS AND CROSS-MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendants' Motion to Dismiss (Dkt. No. 12) and Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 16). Having considered the motions, the Parties' respective replies (Dkt. Nos. 19, 20), and the relevant record, the Court GRANTS IN PART and DENIES IN PART Defendants' motion and DENIES Plaintiff's motion.

I.      BACKGROUND

This case concerns the disposition of a visa application of a Pakistani national who is engaged to be married to Plaintiff, a United States Citizen. *See* Dkt. No. 9 (amended complaint) ¶¶ 12–25. Plaintiff seeks declaratory relief, injunctive relief, and a writ of mandamus, with an ultimate objective of compelling the federal government to take further action on her fiancé's

visa application. *See id.* at 2. Plaintiff does not request *approval* of her fiancé's application; she seeks only to "compel the Defendants to act and adjudicate" it. *Id.* ¶ 45.

A.   **Factual Background**

   1.   **Parties**

Plaintiff is Sonya Safqat Mahmood. *Id.* at 2. Plaintiff, a physician, is a United States citizen born in 1988 who resides in King County, Washington. *Id.* ¶¶ 1, 11, 15. Plaintiff originally filed this civil action against Rena Bitter, formerly Assistant Secretary of State for Consular Affairs; (2) Julie Stufft, formerly Deputy Assistant Secretary for Visa Services in the State Department's Bureau of Consular Affairs; and (3) Andrew Schofer, formerly Deputy Chief of Mission at the United States Embassy in Islamabad, Pakistan. Dkt. No. 9. Pursuant to Federal Rule of Civil Procedure 25(d), John Armstrong, whom Defendants identify as "Senior Bureau Official," has been substituted for Defendants Bitter and Stufft. Dkt. No. 19 at 1 n.1.[1]

   2.   **Facts**

On December 25, 2021, family members arranged for Plaintiff's virtual introduction to Hassan Tariq, a Pakistani national born in 1991 who resides in Pakistan and works as an engineer. Dkt. No. 9 ¶¶ 13, 15. Over the ensuing months, Plaintiff and Tariq corresponded with each other via Whatsapp and "developed a strong and deep bond with one another." *Id.* ¶ 14; *see* Dkt. 9-1 (Ex. D) at 8–10 (text messages). On March 18, 2022, Plaintiff traveled to Pakistan to meet Tariq in person. Dkt. No. 9 ¶ 16. On March 23, 2022, Plaintiff and Tariq met for the first time, in Multan, Pakistan. *Id.* ¶ 17. On March 25, 2022, the pair celebrated an engagement ceremony in Multan. *Id.* ¶ 18.

---

[1] While Defendants Bitter and Stufft are no longer parties to this case, the status of Defendant Schofer is unclear.

After returning to Washington, Plaintiff began making diplomatic arrangements to wed Tariq in the United States. "There is a two-step process to apply for a fiancé[] visa." *Mayle v. Holder*, No. C14-4072, 2015 WL 4193864, at *1 (N.D. Cal. July 10, 2015). "First a U.S. citizen must file a Form I-129F ('K-1') visa petition with the United States Citizenship and Immigration Service ('USCIS')." *Id.* USCIS is an agency within the Department of Homeland Security. 6 U.S.C. § 271. "Second, upon approval, the non-citizen beneficiary of the petition must apply for the nonimmigrant visa abroad through the U.S. Consul." *Mayle*, 2015 WL 4193864, at *1. The Bureau of Consular Affairs is an arm of the State Department. 22 U.S.C. § 2651a(g). The central conflict of this case concerns this second step.

On April 2, 2022, Plaintiff filed a form I-129F and a form I-134, "Declaration of Financial Support," with USCIS. Dkt. No. 9 ¶ 19; *see* Dkt. No. 9-1 (Ex. I) at 28 (USCIS acknowledgement of receipt of petition). On May 11, 2023, USCIS approved Plaintiff's fiancé visa petition. Dkt. No. 9 ¶ 20; *see* Dkt. No. 9-1 (Ex. J) at 30 (notice of approval). USCIS then sent the petition to the State Department's National Visa Center ("NVC") for adjudication. Dkt. No. 9 ¶ 20; *see* Dkt. No. 9-1 at 30. Plaintiff was advised that "NVC [would] create a case record with [her] petition information [and] send the petition to the U.S. Embassy or Consulate where [her] fiance(e) [would] be interviewed for his . . . visa." Dkt. No. 9-1 at 30. On August 8, 2023, NVC advised Tariq that it had received the visa petition from USCIS. Dkt. No. 9 ¶ 21; *see* Dkt. No. 9-1 (Ex. K) at 32. NVC assigned a case number and advised that Tariq would be scheduled for an interview at the United States Embassy in Islamabad. Dkt. No. 9 ¶ 21; *see* Dkt. No. 9-1 at 32. On August 9, 2023, Tariq completed form DS-160, "Online Nonimmigrant Visa Application," and submitted it to the State Department. Dkt. No. 9 ¶ 22; *see* Dkt. No. 9-1 (Ex. L) at 34. On or about October 15–16, 2023, Tariq "completed all steps as directed pertaining to his

medical examination." Dkt. No. 9 ¶ 23. Tariq provided "his sealed examination" to the embassy in Islamabad. *Id.*

On October 31, 2023, Tariq sat for his consular interview at the embassy. *Id.* ¶ 24. The interviewing officer "interrogated [Tariq] on his academic history." *Id.* Tariq had brought to his interview documentation of his education—"all of his educational certificates and transcripts"—but the interviewing officer would not accept them and advised Tariq that he needed to submit them by email and postal mail. *Id.* On the same day, October 31, 2023, the embassy refused Tariq's visa petition, issuing him a notice informing him of the refusal but requesting that he submit his passport and "certain academic transcripts" online or via courier. *Id.*; *see* Dkt. No. 9-1 (Ex. M) at 37–38 ("Refusal Notice"). The Refusal Notice advised further that Tariq's visa had been refused under Section 221(g) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1201(g), and that his petition had been placed in "[a]dministrative processing." Dkt. No. 9-1 at 37. Tariq provided the requested documents—i.e., the passport and academic transcripts—that same day. Dkt. No. 9 ¶ 26; *see* Dkt. No. 9-1 (Ex. N) at 40 (Tariq email).[2] As of January 10, 2025, Tariq's visa petition remains in "administrative processing." *See* Dkt. No. 9 ¶ 27. "Plaintiff has not been provided with a realistic timeline as to when her fiancé visa petition will be adjudicated." *Id.* ¶ 28.

The delay in adjudicating the visa application has caused Plaintiff "to experience physical and emotional stressors" that "ha[ve] impacted [her] daily ability to function." *Id.* Plaintiff has been "frequently ill" and has "often" missed work. *Id.* Plaintiff—who was "about 36 years old" at the time she filed her amended complaint—has suffered further "long term stress, depression

---

[2] The Court notes that the State Department has essentially impounded Tariq's Pakistani passport. Consequently, the United States government has indefinitely confined him within the borders of Pakistan. *See* Dkt. No. 9-1 (Ex. P) at 45 (noting Tariq's inability to leave Pakistan).

and anxiety" due to what she characterizes as a "limit[ed] . . . ability to have biological children in the future with [Tariq]." *Id.* ¶ 29.

B.     **Procedural Background**

On October 10, 2024, Plaintiff filed a civil action against Defendants seeking declaratory, mandamus, and injunctive relief. Dkt. No. 1. On January 10, 2025, Plaintiff filed an amended complaint. Dkt. No. 9. On January 15, 2025, Defendants moved to dismiss the amended complaint. Dkt. No. 12. On February 21, 2025, Plaintiff responded to Defendants' motion to dismiss and concurrently cross-moved for summary judgment. Dkt. No. 16. On March 12, 2025, Defendants filed a combined reply brief/opposition to summary judgment. Dkt. No. 19. On March 28, 2025, Plaintiff filed a reply brief. Dkt. Nos. 20, 21.[3]

II.     LEGAL STANDARD

A.     **Motion to Dismiss**

A defendant may seek dismissal when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded factual allegations as true and considers whether the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient, a claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 672. Dismissal is also appropriate "based on the lack of a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

---

[3] Plaintiff appears to have filed her reply brief twice. The only difference between Docket No. 20 and Docket No. 21 is the word count provided after the signature block. *Compare* Dkt. No. 20 at 5, *with* Dkt. No. 21 at 5.

1  When reviewing a dismissal pursuant to Rule 12(b)(6), "we accept as true all facts alleged in the
2  complaint and construe them in the light most favorable to plaintiff[ ], the non-moving party."
3  *DaVinci Aircraft, Inc. v. United States*, 926 F.3d 1117, 1122 (9th Cir. 2019) (alteration in
4  original) (quoting *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1156–57
5  (9th Cir. 2017)).

6  **B.    Motion for Summary Judgment**

7  The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after
8  adequate time for discovery and upon motion, against a party who fails to make a showing
9  sufficient to establish the existence of an element essential to that party's case, and on which that
10 party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322
11 (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the
12 evidence presents a sufficient disagreement to require submission to a jury or whether it is so
13 one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S.
14 242, 251–52 (1986).

15 The party moving for summary judgment must carry its burden of production by "either
16 produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or
17 show[ing] that the nonmoving party does not have enough evidence of an essential element to
18 carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*
19 *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in
20 the record. Fed. R. Civ. P. 56(c) (explaining the ways in which a "party asserting that a fact
21 cannot be or is genuinely disputed must support the assertion"). Unless the burden of production
22 is met, "the nonmoving party has no obligation to produce anything" to support its claims or
23 defenses. *Nissan Fire*, 210 F.3d at 1103.

24

Courts do not make credibility determinations or weigh the evidence at this stage. *See Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual issues in favor of a non-moving party, "only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further, uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (internal citations omitted).

### III.  Discussion

Plaintiff seeks relief under the Mandamus Act (*see* Dkt. No. 9 ¶¶ 36–47), Administrative Procedure Act ("APA") (*see id.* ¶¶ 48–57), and the Fifth Amendment to the United States Constitution (*see id.* ¶¶ 58–61). Counts One (Mandamus Act) and Two (APA) allege that Defendants have neglected to perform a statutorily required, nondiscretionary duty—i.e., the adjudication of Tariq's visa application—within a reasonable amount of time. *Id.* ¶¶ 40, 42, 50. Count Three alleges that Defendants' failure to adjudicate the visa application represents an arbitrary and capricious abuse of discretion under the APA. *Id.* ¶¶ 54–55. And Count Four alleges that Defendants' failure to adjudicate Tariq's visa application violates Plaintiff's right to due process under the Fifth Amendment. *Id.* ¶¶ 59, 61.

**A.  APA and Mandamus Claims**

    **1.  Counts One and Two: Unlawfully Withheld or Unreasonably Delayed Agency Action**

Under the Mandamus Act, as applied through the All Writs Act, a court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the

plaintiff." 28 U.S.C. §§ 1361, 1651. Similarly, the APA authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

The Court considers Plaintiff's Mandamus claim and APA Section 706(1) claim together. "Because 'mandamus relief and relief under the APA are "in essence" the same, when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only.'" *Khosravi v. Rubio*, No. C24-1227, 2025 WL 821885, at *3 (W.D. Wash. Mar. 14, 2025) (quoting *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022)); *see also Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997) ("[T]he Supreme Court has construed a claim seeking mandamus under the [Mandamus Act], 'in essence,' as one for relief under § 706 of the APA.") (quoting *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 n.4 (1986)).

Under the APA, "a court has authority to compel an 'unreasonably delayed' agency action, but 'only if there is a specific, unequivocal command placed on the agency to take a discrete agency action, and the agency has failed to take that action.'" *Khosravi*, 2025 WL 821885, at *3 (quoting *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016)); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 ("[A] claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."). Thus, two conditions must be met for the Court to compel agency action: "the agency (1) has 'a clear, certain, and mandatory duty,' and (2) has unreasonably delayed in performing such duty." *Khosravi*, 2025 WL 821885, at *3 (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)). The Court will examine these elements in turn.

        **a.**    ***Clear, Certain, and Mandatory Duty***

Plaintiff contends that consular officers have a "clear, mandatory, non-discretionary duty" to "review and adjudicat[e] . . . visa applications." Dkt. No. 16 at 7. The Court agrees. "It is pellucidly clear that there is a nondiscretionary duty to adjudicate completed visa applications." *Nawaz v. Rubio*, No. C24-10983, 2025 WL 1091548, at *3 (C.D. Cal. Mar. 4, 2025) (citing *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) ("A consular office is required by law to act on visa applications.")). Such clarity is borne out in both statute, *see* 8 U.S.C. § 1202(d) ("All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."), and regulation, *see* 22 C.F.R. § 42.81(a) ("When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the INA and the implementing regulations, the consular officer must issue the visa, refuse the visa[, or] discontinue granting the visa."). An additional regulation, 22 C.F.R. § 41.121(a), also provides that "[w]hen a visa application has been properly completed and executed in accordance with the provisions of the INA and implementing regulations, the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa." The APA underlines the agency's obligation here, providing that, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). A visa application, duly presented to a consular officer, is "a matter presented to" the agency for the purposes of Subsection 555(b). *See Tareque v. Bitter*, No. C24-535, 2024 WL 3914507, at *4 (C.D. Cal. Aug. 13, 2024).

        **b.**    ***Unreasonable Delay in Performance of Duty***

In this case, the second element comprises two distinct, yet connected, issues. *See Khosravi*, 2025 WL 821885, at *4–7. The first issue is whether the State Department's combined action of refusing Tariq's visa application, then placing it in "administrative processing," counts

as the agency's performance of its statutory duty to adjudicate the application. Plaintiff argues that it does not, asserting that such action represents an "intermediate step" where the visa application remains pending, and that "any Plaintiff with an application that is in the 'administrative processing' stage has not yet actually received a final decision on their application." Dkt. No. 16 at 5. Defendants assert that the refusal of the application is a final adjudication, irrespective of any subsequent "administrative processing." *See* Dkt. No. 12 at 10–11. Defendants contend that "any duty the consular officer had to act under 22 C.F.R. § 41.121(a) was satisfied by the refusal of [Tariq's] visa application." *Id.* at 11. If—as Plaintiff argues—the State Department has *not* fulfilled its statutory duty, the second issue becomes whether it has kept Plaintiff and Tariq waiting for an unreasonable amount of time.

(1)     Performance of Duty

The Court agrees with Plaintiff: Defendants have not fulfilled their mandatory duty under the INA. As the *Khosravi* court found, "[w]hile nominally 'refused,' [Tariq's] application is, by most other indications, still in the adjudicative process." *Khosravi*, 2025 WL 821885, at *4. Defendants cannot hold Tariq's visa application for something called "administrative processing," then assert that they have rendered a final decision on it. Plaintiff describes Defendants' position that a final adjudication has been rendered as "absurd" and, indeed, Defendants' arguments here hew more closely to *Waiting for Godot* than to the APA. *See* Dkt. No. 16 at 7; Samuel Beckett, *Waiting for Godot* (1953). After all, if Tariq's visa adjudication were final, then what possible reason, beyond needless torment and officiousness, could the State Department have had for requesting that Tariq dispatch his passport to the embassy by courier, and transmit his academic documentation by email or post?[4]

---

[4] Tariq brought his educational certificates and transcripts with him to his interview and offered to provide them to the interviewing officer. Dkt. No. 9 ¶ 24. He was told, however, that the documents had to be provided by post and

The language of the Refusal Notice that Defendants gave Tariq belies their stated position that they have reached a final decision. In placing Tariq's application into "administrative processing," Defendants specifically stated that they were "unable to provide [Tariq] with a specific date when this processing [would] be completed." Dkt. No. 9-1 at 38. The letter went on to say that "[w]hen that process is completed, we will then determine whether you are still eligible to receive a visa. Upon completion of administrative processing and *if your visa is approved,* we will contact you with instructions on how to re-submit your passport[.]" *Id.* (emphasis added). Further, Defendants' Refusal Notice provided Tariq with the URL for a website where he could "check the status of [his] case," which would be "automatically updated on a daily basis." *Id.* The Court is, frankly, baffled. If Defendants had made a final adjudication, then why would they repeatedly mention some version of the phrase "when the process is completed," and be unable to advise Tariq when the processing of his application would be completed? Would not such a date simply be October 31, 2023, the date of the refusal? And if Defendants had made a final refusal of Tariq's application, why would they suggest the possibility of making a *different* decision in the Refusal Notice by using the phrase, "if your visa is approved," and then encourage Tariq to visit their website *every day* and be advised—and re-advised, and re-advised—of that purportedly *final* refusal?

This Court joins other Ninth Circuit courts in "considering 'what is *actually* happening' in the case" when determining whether a visa adjudication is, in reality, final. *Momeni v. Blinken*, No. C24-4879, 2024 WL 5112234, at *4 (C.D. Cal. Dec. 13, 2024) (quoting *Aminzadeh v. Blinken*, No. C24-2025, 2024 WL 3811153, at *4 (C.D. Cal. Aug. 9, 2024)); *see Khosravi*, 2025 WL 821885, at *5; *Mobayen v. Blinken*, No. C24-7456, at *9 (C.D. Cal. Apr. 10, 2025);

---

email. *Id.* The Refusal Notice directed Tariq to send his transcripts from his bachelor's and master's programs online or via courier. Dkt. No. 9-1 at 37.

*Mahonak v. Rubio*, No. C24-1443, 2025 WL 449044, at *12 (C.D. Cal. Feb. 10, 2025); *Sheikhalizadehjahed v. Gaudosi*, No. C24-1136, 2024 WL 4505648, at *7 (E.D. Cal. Oct. 16, 2024); *see also Patel*, 134 F.3d at 932 ("No provision for suspension of the visa applications or for a temporary refusal is provided in 22 C.F.R. § 42.81."); *Vulupala v. Barr*, 438 F. Supp. 3d 93, 98 (D.D.C. 2020). And what is "*actually* happening" here is that Tariq's application is processing, and Tariq is waiting for the completion of such processing. When a decision is final, one need not wait for the decision maker to "complete" making that decision. Defendants' repetition of the phrases "[w]hen that process is completed" and "[u]pon completion of . . . processing" clearly demonstrate that their decision is not, in fact, final. Dkt. No. 9-1 at 38.

      At its heart, Defendants' position is predicated on the dubious and circular presumption that because the government has done *something*, it must be legal. Defendants argue, "Because [Tariq] did not demonstrate his eligibility for a nonimmigrant visa, the consular officer was statutorily required to refuse his visa application. As a result, any duty the consular officer had to act under 22 C.F.R. § 41.121(a) was satisfied by the refusal of the visa application." Dkt. No. 12 at 11 (citations removed). In other words, because the law required Defendants to refuse the visa application, then, *ipso facto*, whatever Defendants did to that end was a lawful refusal of the application. This is plainly not the law in the Ninth Circuit, where such a duty is actually satisfied only if the consular officer's actions constitute a "final decision," done properly. *Patel*, 134 F.3d at 932. "Simply describing the decision as final does not make it so." *Hassan v. Dillard*, 758 F. Supp. 3d 973, 981 (D. Minn. 2024).

      As in *Khosravi*, "the Court acknowledges that courts have come to opposing conclusions on this issue." 2025 WL 821885, at *5 (collecting cases). Ultimately, the *Khosravi* court sided with what it deemed "the majority view," wherein "the initial refusal of a visa application

pending 'administrative processing' does not discharge the consular duty to adjudicate a visa application." *Id.* This Court now does the same.

> Absent binding precedent, the Court is persuaded that § 1202(b) imposes a non-discretionary duty to review and adjudicate visa applications. The initial refusal of [the] visa application while placing it in 'administrative processing' does not dispense with this duty because there has been no final adjudication. Any other conclusion about § 1202(b) and circumstances like these would allow [the State Department] to evade any judicial review of delayed adjudications by issuing pro forma refusals while continuing to administratively process cases. The Court is unwilling to adopt statutory interpretations which would produce absurd results.

*Sheikhalizadehjahed*, 2024 WL 4505648, at *7. The Court thus finds that Defendants have not performed their statutory duty to adjudicate Tariq's visa application.

### (2)  Unreasonable Delay

The next question, then, is whether Defendants' delay in failing to adjudicate Tariq's application has been unreasonably long. The APA requires an agency to adjudicate "a matter presented to it" "within a reasonable time." 5 U.S.C. § 555(b). To evaluate whether an agency delay is reasonable, courts consider the six so-called *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (quoting *Telecomms. Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*").

"Because of the fact-intensive nature of the reasonableness determination, courts disagree on whether the *TRAC* factors should be analyzed to resolve a motion to dismiss." *Zargarian v. Oudkirk*, No. C24-2008, 2025 WL 1263531, at *6 (E.D. Cal. May 1, 2025) (quoting *Iqbal v. Blinken*, No. C23-1299, 2023 WL 7418353, at *7 (E.D. Cal. Nov. 9, 2023)). In *Zargarian*, a visa-refusal case similar to the instant case, the court found that, at the motion-to-dismiss stage, "application of the *TRAC* factors would require the court to evaluate the reason for the delay and, at this early stage in the litigation, it can only do so by looking beyond the face of the complaint to assumptions and generalities rather than based upon a fact-specific inquiry." *Id.* at *7. "The Ninth Circuit has yet to address this question," *id.* at *6, and the Court finds it prudent to follow *Zargarian* in the instant case. That is, the Court finds that the record has not been sufficiently developed to enable it to meaningfully engage in a full analysis of the *TRAC* factors. A look at the first factor, "rule of reason," is illustrative of the problem.

"The most important [*TRAC* factor] is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Comty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). "The first *TRAC* factor, the rule of reason inquiry, considers the length of the delay and 'whether the agency's response time . . . is governed by an identifiable rationale.'" *Khan v. Blinken*, No. C23-2814, 2024 WL 3446432, at *7 (E.D. Cal. July 17, 2024) (quoting *Poursohi v. Blinken*, No. C21-1960, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021)). As to the length of delay, the 19 months between Tariq's interview and now does not appear to be beyond the pale within the context of "administrative processing" after an initial refusal of a visa.[5] *See Khosravi*, 2025 WL 821885, at *6 (collecting cases). Plenty of applicants, like Tariq here, are forced to wait, and wait. But this is only half of the inquiry, and Plaintiff's complaint indicates that the delay here

---

[5] "[T]he length of delay [is] measured from the last agency action to the date this order issues." *Zargarian*, 2025 WL 1263531, at *7 (collecting cases).

might not have been "governed by a rule of reason." Indeed, the complaint alleges that Defendants have not provided Plaintiff with any justification or rationale for the extended "administrative processing" to which they are presently subjecting Tariq's application. Plaintiff alleges that she "has submitted multiple inquiries regarding the status of [Tariq's] visa petition to both her local representative, NVC and the Islamabad Embassy, all to no avail." Dkt. No. 9 ¶ 34. Defendants' alleged nonresponse to Plaintiff's queries about Tariq's case is not a "rule of reason," nor is Defendants' repeated assertion in their motion to dismiss that this is just how long these things take. *See* Dkt. No. 12 at 18; *cf. Alexeenko v. U.S. Citizenship & Immigr. Servs.*, No. C24-12166, 2025 WL 1366865, at *4 (S.D. Cal. Apr. 21, 2025) (finding USCIS's "Last-In-First-Out ('LIFO') system" for processing asylum applications "constitute[d] a 'rule of reason' sufficient to satisfy the first *TRAC* factor"); *Monk v. Wilkie*, 32 Vet. App. 87, 104 (2019) (finding "statutory scheme governing VA benefits" was "rule of reason" under first *TRAC* factor).

On the record before it, then, which has not been developed through discovery, the Court cannot conclude one way or the other whether the delay in adjudicating Tariq's visa application has been governed by a rule of reason. Thus, "[g]iven that the *TRAC* factors are meant to be fact-intensive, the court finds that application of the *TRAC* factors in this case at this stage of the litigation is premature, and 'the reasonableness inquiry is best resolved ultimately on a full factual record.'" *Zargarian*, 2025 WL 1263531, at *7 (quoting *Iqbal v. Blinken*, 2023 WL 7418353, at *3)); *see also Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) ("What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case.").

//

//

//

### 2. Count Three: Arbitrary and Capricious Agency Action

In Plaintiff's third cause of action, Plaintiff alleges that Defendants' ongoing failure to adjudicate Tariq's visa application is an arbitrary and capricious abuse of discretion under APA Section 706(2). Dkt. No. 9 ¶¶ 54–55. This claim must be dismissed.

Under 5 U.S.C. § 706(2)(A), a "court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." However, "the APA does not provide for judicial review of agency action that is not final . . . ." *Int'l Bhd. of Teamsters v. U.S. Dep't of Transp.*, 861 F.3d 944, 952 (9th Cir. 2017) (citing 5 U.S.C. § 704). Thus, "[w]here, as here, [Plaintiff] does not allege a final agency action and only challenges [Defendants'] unreasonable delay, § 706(2) is 'not the proper vehicle for [her] to allege [her] unreasonable delay claim.'" *Maimaitiyiming v. Garland*, No. C24-2001, 2025 WL 1068098, at *4 (C.D. Cal. Apr. 9, 2025) (quoting *Karapetyan v. Mayorkas*, No. C24-5838, 2025 WL 665651, at *5 n.4 (C.D. Cal. Feb. 5, 2025)). "Instead, '[a] challenge to an agency's alleged failure to act is more appropriately channeled through Section 706(1).'" *Id.* (quoting *Durham v. Blinken*, No. C24-2868, 2024 WL 3811146, at *4 (C.D. Cal. Aug. 8, 2024)). The thrust of Plaintiff's complaint, of course, is that Defendants have failed to render a final adjudication on Tariq's visa application. *See* Dkt. No. 9 ¶¶ 39, 45. Therefore, arbitrary-and-capricious review under APA Section 706(2)(A) is inappropriate.

### B. Count Four: Due Process

In Plaintiff's fourth cause of action, Plaintiff alleges that "Defendants' egregious delay in adjudicating [Tariq's] visa petition violates [Plaintiff's] rights under the Fifth Amendment of the Constitution . . . ." Dkt. No. 9 ¶ 59. Specifically, "Defendants' action, that being inaction, has [deprived] and continues to deprive the Plaintiff of her life with [Tariq] in the United States." *Id.* ¶ 60. Defendants assert that Plaintiff's Fifth Amendment rights do not extend to her fiancé's

entitlement to have his visa adjudicated, arguing that Plaintiff "does not have a fundamental liberty interest in her foreign-citizen fiancé to obtain a visa to be admitted to the United States." *See* Dkt. No. 12 at 23. "[Plaintiff's] fiancé does not have a right to a visa, nor a 'constitutionally-protected interest in the procedures by which such visas are obtained.'" *Id.* (quoting *Smirnov v. Clinton*, 806 F. Supp. 2d 1, 12 (D.D.C. 2011)). Defendant argues further that the Court must dismiss Plaintiff's fourth cause of action on procedural grounds, because Plaintiff did not address the claim in her Opposition/Cross-Motion for Summary Judgment (Dkt. No. 16). *See* Dkt. No. 19 at 7 ("Because [Plaintiff] has failed to develop her argument in her briefing, [this] claim[ is] waived." (first citing *Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16, 2016), then citing *United States v. Kimble*, 107 F.3d 712, 715 n.2 (9th Cir. 1997))).

Irrespective of Defendants' procedural argument, Plaintiff's constitutional claim must be dismissed on substantive grounds. The Supreme Court recently rejected the notion that a plaintiff has a constitutional interest in obtaining and maintaining marital status with a noncitizen. "Congress can use its authority over immigration to prioritize the unity of the immigrant family. . . . But the Constitution does not *require* this result. . . . [W]hile Congress may show special solicitude to noncitizen spouses, such solicitude is 'a matter of legislative grace rather than fundamental right.'" *Dep't of State v. Muñoz*, 602 U.S. 899, 916 (2024). Ninth Circuit courts have applied the Supreme Court's holding in *Muñoz* to fact patterns involving delayed visa applications. *See Zargarian*, 2025 WL 1263531, at *9 (plaintiff's sister); *Alam v. Blinken*, No. C24-1103, 2024 WL 4804557, at *10 (E.D. Cal. Nov. 15, 2024) (plaintiff's spouse); *Sheikhalizadehjahed*, 2024 WL 4505648, at *1 (plaintiff's father). And while recent policy statements issuing from the executive branch suggest that the federal government might view a *fiancé's* visa application differently than that of a sibling, parent, or already-married spouse,

especially where, as Plaintiff alleges here, a couple's ability to reproduce is harmed by Defendants' misconduct—*see, e.g.*, U.S. Dep't of Transp. Order No. 2100.7 (Jan. 29, 2025) (directing Department of Transportation programs, policies, and activities to "give preference to communities with marriage and birth rates higher than the national average")—Plaintiff does not provide convincing argument, especially in light of *Muñoz*, that her "[inability] to build a life with her fiancé" and "massive decline in egg quantity and quality" are bona fide constitutional issues that demand judicial redress.

C.    **Disposition of the Motions**

    1.    **Defendants' Motion to Dismiss**

As discussed above, Plaintiff's third and fourth causes of action are legally untenable and must be dismissed as a matter of law. Therefore, as to Counts Three and Four, Defendants' motion to dismiss is GRANTED, and Plaintiff's motion for summary judgment is DENIED AS MOOT.

Where a dismissed claim fails as a matter of law and amendment would be futile, a district court need not grant a plaintiff leave to amend. *See Yakama Indian Nation v. State of Wash. Dep't of Revenue*, 176 F.3d 1241, 1246 (9th Cir. 1999). Given that the APA limits judicial review to final agency actions, *see* 5 U.S.C. § 704, Plaintiff's arbitrary-and-capricious cause of action cannot be repleaded without abandoning the grounds upon which her mandamus and unreasonable-delay claims are based. Therefore, amendment is futile, and Count Three is DISMISSED WITH PREJUDICE, without leave to amend. Because Plaintiff's Fifth Amendment claim "relies on an asserted due process interest foreclosed by binding precedent," Count Four is also DISMISSED WITH PREJUDICE, without leave to amend. *Andalib v. United States*, No. C23-1110, 2024 WL 685945, at *8 (C.D. Cal. Feb. 9, 2024).

As to Plaintiff's first and second claims, however, Plaintiff has plausibly alleged a violation. Given Defendants' failure to demonstrate a "rule of reason" for their inaction on

Tariq's visa application, Plaintiff has plausibly alleged unreasonable delay. *See Sheikhalizadehjahed*, 2024 WL 4505648, at *9 (finding that a delay of 20 months at the time of the order, "without the benefit of further justification or explanation as to why gathering additional information is taking so long, is enough to plausibly allege an unreasonable delay"). The Court need not consider the additional *TRAC* factors at this time. *See Zargarian*, 2025 WL 1263531, at *6 (noting that, under *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), a complaint need only satisfy the pleading standard of Rule 8, not establish a prima facie case, to survive a motion to dismiss brought under Rule 12(b)(6)). After discovery has facilitated the development of a full factual record, and Defendants proffer evidence that tends to indicate, among other things, a "rule of reason," the *TRAC* factors may well point toward a finding that Defendants' delay in adjudicating Tariq's visa application was reasonable.[6] But on the record before it now, the Court finds that Plaintiff has stated a claim to relief that is plausible on its face.

Therefore, as to Counts One and Two, Defendants' motion to dismiss is DENIED.

### 2. Plaintiff's Motion for Summary Judgment

"The court's concerns regarding *TRAC* review discussed above persist in the context of summary judgment. The court does not have evidence necessary to determine, for instance, the reason for the delay . . . ." *Zargarian*, 2025 WL 1263531, at *9; *see supra* Section III.A.1.b.2. "As a general matter, the Court usually refrains from deciding pre-discovery motions for summary judgment." *Galp Sierra Vista LP v. RSUI Indem. Co.*, No. C10-5647, 2012 WL 13019222, at *2 (W.D. Wash. Nov. 13, 2012). Moreover, in APA cases, "summary judgment functions as a mechanism for determining as a matter of law whether the administrative record

---

[6] The Court's decision is not based on its analysis of the first *TRAC* factor. Rather, the Court's discussion of the first *TRAC* factor illustrates how Plaintiff has successfully "nudged [her] claims across the line from conceivable to plausible" for the purpose of a motion to dismiss. *Twombly*, 550 U.S. at 570.

supports . . . whether the agency complied with the APA." *Victorov v. Barr*, No. C19-6948, 2020 WL 3213788, at *2 (C.D. Cal. Apr. 9, 2020) (citing *Raj & Co. v. U.S. Citizenship & Immigr. Servs.*, 85 F. Supp. 3d 1241, 1244–45 (W.D. Wash. 2015)); *see also Zargarian*, 2025 WL 1265351, at *9 (denying pre-discovery motion for summary judgment in visa-application-delay case "[t]o allow time for further discovery to clarify the fact-intensive *TRAC* factors").[7] Given the paucity of the record, there exist genuine issues of material fact that preclude the Court from granting summary judgment.

Therefore, Plaintiff's motion for summary judgment is DENIED WITHOUT PREJUDICE. Plaintiff may re-file her motion upon further development of the factual record.

## IV.   CONCLUSION

Accordingly, it is hereby ORDERED:

(1)   Defendants' Motion to Dismiss (Dkt. No. 12) is GRANTED IN PART and DENIED IN PART;

(2)   Counts Three and Four of Plaintiff's Amended Complaint (Dkt. No. 9) are DISMISSED WITH PREJUDICE;

(3)   Plaintiff's Cross-Motion for Summary Judgment (Dkt. No. 16) is DENIED.

Dated this 29th day of May 2025.

Tana Lin
United States District Judge

---

[7] In *Khosravi*, the court performed a pre-discovery analysis of the *TRAC* factors because the plaintiffs in that case asked the court to adjudicate the case based on the "sparse" record that had been developed to that point. *Khosravi*, 2025 WL 821885, at *7.